UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| Jesus Rodriguez, | § | |
| | § | |
| *Plaintiff,* | § | |
| vs. | § | Civil Action H-06-820 |
| | § | |
| Texas Department of Criminal Justice, | § | |
| *et al.*, | § | |
| | § | |
| *Defendants.* | § | |

# MEMORANDUM AND ORDER

By Order of December 1, 2006 (Dkt. 52), this court[1] advised the parties that it would consider *sua sponte* the res judicata effect of a previous summary judgment against the plaintiff. *Jesus Rodriguez v. Texas Dep't of Criminal Justice, et al.,* Civil Action No. H-01-3985 (Memorandum and Order, July 24, 2003) (Crone, J.)("*Rodriguez I*"). The parties were directed to file briefing and pertinent summary judgment evidence addressing whether the doctrine of res judicata bars Rodriguez from re-litigating any claim or issue in this case. Convinced that the doctrine of collateral estoppel precludes Rodriguez from re-litigating certain issues regarding disability status, employer status, and liability of managers and supervisors, defendants are entitled to partial summary judgment to the extent discussed below.

---

[1] The parties have consented to the jurisdiction of this magistrate judge for all purposes, including final judgment. (Dkt. 34).

**BACKGROUND**

Jesus Rodriguez is a Hispanic male previously employed by the Windham School District as diagnostician. On March 10, 2006 he filed this lawsuit complaining of employment discrimination based on disability, race, national origin, age, gender, and retaliation. Specifically Rodriguez claims that he was unlawfully denied promotions, transfers, reassignments, and reasonable workplace accommodations on 17 different occasions between July 2003 and June 2004.[2] He also asserts that he was wrongfully discharged on March 8, 2006.[3] Rodriguez brings these claims under a plethora of statutes, including Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §§ 2000e, the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. § 621, Chapter 21 of the Texas Labor Code, TEX. LAB. CODE ANN. §§ 21.001-21.128, the Americans With Disabilities Act ("ADA"), 42 U.S.C. §§ 12101-12113, the Rehabilitation Act, 29 U.S.C. § 794(a), the Civil Rights Act of 1866, 42 U.S.C. § 1981, the Civil Rights Act of 1871, 42 U.S.C. § 1983, 42 U.S.C. § 1982, and 42 U.S.C. § 1985(3), as well as the Equal Protection and Due Process Clauses of the Fourteenth Amendment to the U.S. Constitution. Of the ten defendants, three are governmental entities: Windham School District, Texas Department of Criminal Justice, and Texas Board of Criminal Justice ("Board"). The remaining seven are executive-level officials employed by those entities: Livingston (TDCJ), Crain (Board), Benestante (WSD),

---

[2] See Ex. A to Plaintiff's "Facts and Statements of the Incidents Made the Basis of Plaintiff's Complaints As Requested By This Honorable Court" (Dkt. 59).

[3] See Plaintiff's First Amended Complaint at p.18 (Dkt. 75).

Durham (WSD), Hamilton (WSD), Haynes (WSD), and Bradford (WSD).

Rodriguez filed a previous employment discrimination lawsuit in 2001 against the same state entities[4] under most of the same statutes (only the ADEA was omitted). *See Jesus Rodriguez v. Texas Dep't of Criminal Justice, et al.*, Civil Action No. H-01-3985. That case was resolved by a final judgment on the merits rendered on July 23, 2003, in accordance with a detailed summary judgment opinion prepared by then-Magistrate Judge Marcia Crone. Among the issues actually litigated and decided by Judge Crone's opinion are the following:

- Rodriguez does not have a disability within the meaning of the ADA or the Rehabilitation Act;[5]

- Rodriguez was employed only by WSD, and not by any other defendant;[6]

- The individual defendants, as managerial and supervisory employees of state entities, cannot be held personally liable under either Title VII or any other federal or state employment discrimination law.[7]

These are only some of the more significant holdings, which culminated in a final judgment on the merits in favor of all defendants.[8] That judgment was not appealed.

---

[4] Although the names of the individual defendants are different, the individual defendants named in the first lawsuit occupied basically the same managerial level positions as the individual defendants in the current suit.

[5] *Rodriguez I* at 65-69.

[6] *Id.* at 21.

[7] *Id.* at 23.

[8] Civil Action No. H-01-3985, Dkt. 33 (filed July 23, 2003).

## ANALYSIS

Summary judgment is appropriate if no genuine issues of material fact exist, and one party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). Even though defendants have not yet pleaded the defense, collateral estoppel implicates important institutional interests of the court, and may be properly raised and considered *sua sponte*. *Arizona v. California*, 530 U.S. 392, 412-13 (2000); *see also Doe v. Pfrommer*, 148 F.3d 73, 80 (2d Cir. 1998) (concluding that policy of "avoiding relitigation" justified *sua sponte* consideration of collateral estoppel defense). The Supreme Court has stated

> res judicata and its offspring, collateral estoppel, are not statutory defenses; they are defenses adopted by the courts in furtherance of prompt and efficient administration of the business that comes before them. They are grounded on the theory that one litigant cannot unduly consume the time of the court at the expense of other litigants, and that, once the court has finally decided an issue, a litigant cannot demand that it be decided again.

*United States v. Sioux Nation*, 448 U.S. 371, 432 (1980). Accordingly, if a court is on notice that it has previously decided the issues presented, the court may dismiss the action, on its own, even though the defense has not been raised. *Id.*

Res judicata has been explained as a legal rule which "encompasses two separate but linked preclusive doctrines: (1) true res judicata or claim preclusion and (2) collateral estoppel or issue preclusion." *Test Masters Educational services Inc. v. Singh,* 428 F.3d 559, 571 (5th Cir. 2005). Claim preclusion bars the litigation of causes of action that either have been litigated or should have been litigated in an earlier suit. The test for claim preclusion has four elements: (1) the parties are identical or in privity; (2) the prior judgment was

4

rendered by a court of competent jurisdiction; (3) the prior action was concluded by a final judgment on the merits; and (4) the same claim or cause of action was involved in both actions. *Petro-Hunt, L.L.C. v. United States,* 365 F.3d 385, 395 (5th Cir. 2004). The critical issue is whether the two actions are based on the "same nucleus of operative facts." *New York Life Ins. Co. v. Gillispie,* 203 F.3d 384, 387 (5th Cir. 2000).

Rodriguez correctly points out that because his current lawsuit is based on employment decisions occurring after the prior judgment was rendered in July 2003, the operative facts of the two actions are not the same. Therefore his current action is not estopped by the doctrine of *claim* preclusion.

However, this does not end the res judicata inquiry. Rodriguez may still be estopped by the doctrine of *issue* preclusion, commonly called collateral estoppel. Collateral estoppel bars a party from re-litigating (1) identical issues (2) actually litigated and (3) necessarily adjudicated in a prior proceeding between the same parties. *United Home Rentals, Inc. v. Texas Real Estate Co.*, 716 F.2d 324, 331 (5th Cir. 1983). For collateral estoppel to apply, it is not necessary that the two cases involve the same causes of action or the same nucleus of operative fact. *Montana v. United States*, 440 U.S. 147, 153 (1979). Judge Crone decided at least three issues which appear identical to those presented by this current litigation.

1. **Disability status**

First, Rodriguez was determined not to have a disability within the meaning of the

ADA or the Rehabilitation Act.[9] Rodriguez claims to be disabled based on the same impairments in both suits: post poliomyelitis and related hip and spine deformities, paralysis, and chronic muscle and bone deterioration.[10] Rodriguez also relies upon precisely the same medical records as before, all of which pre-date Judge Crone's opinion.[11] In fact, Rodriguez vociferously objected to his employer's request for information updating his medical status, precisely because "[m]y diagnosis, prognosis, limitations and restrictions will remain the same and will never change."[12] In a January 12, 2004 e-mail, Rodriguez declared:

> Obtaining an endless number of medical exams and reports will not avail and/or accomplish much.
>
> The original information submitted to you on 9/15/1999 & 1/15/2000 is still (very) current . . .
>
> Please refer to the medical information form dated 1/15/2000, limitations/restrictions developed and provided by my physician to you as required by policy. . . These limitations and restrictions are still current and will always be current.
>
> Just how many times do you want physicians to document my medical condition? Isn't once enough?
>
> You are acting in bad faith.

*See* Dkt. 59-4.

Without question, Rodriguez is attempting to re-litigate his disability status and

---

[9] *Rodriguez I* at 68-69.

[10] First Amended Complaint, at 28; *Rodriguez I* at 68-69.

[11] *See* Dkt. 59-7, 59-8.

[12] *See* Dkt. 59-4.

thereby circumvent the earlier adverse ruling by this district court.  Because plaintiff's disability status was actually and necessarily litigated in the previous action against his employer, Rodriguez is precluded from raising this issue again.  Once is indeed enough.  Accordingly, his claims of disability discrimination, and failure to accommodate under the ADA, the Rehabilitation Act, and the TCHRA are dismissed.

**2.    Employer status**

Rodriguez also asserts that he was employed by the TDCJ and the Board, as well as by WSD, and seeks to hold them all liable as employers under various statutes prohibiting employment discrimination and retaliation.  This identical issue was also actually and necessarily litigated before Judge Crone, who explicitly ruled that "WSD controls the terms and conditions of Rodriguez's employment" and that "Rodriguez is not an employee of TDCJ, the Board, or [TDCJ Executive Director] Johnson."[13]  Rodriguez has offered no argument or evidence suggesting any material change in employer status between July 2003 and his termination in March 2006.  Because Rodriguez's claims of employment discrimination under Title VII, ADA, ADEA, Rehabilitation Act, TCHRA, and other federal civil rights laws are only viable (if at all)[14] against WSD as his employer, neither the TDCJ nor the Board are proper defendants in this case.  Accordingly, all claims against the TDCJ and the Board are dismissed.

---

[13] *Rodriguez I* at 21.

[14] For reasons already explained, Rodriguez's disability discrimination claims against WSD are also barred.

### 3.     Managers' and supervisors' liability

In his previous action, Rodriguez brought claims against six individual defendants arising solely out of their actions as managerial and supervisory employees of the defendant state agencies. Judge Crone dismissed all claims against these defendants on multiple legal grounds. Among the legal issues actually and necessarily decided by Judge Crone was the lack of personal liability for individual supervisors under Title VII and other employment discrimination laws.[15]

Here, Rodriguez has sued seven individual defendants who likewise acted as managerial and supervisory employees of the state agencies. Although the names are different, their job titles and duties were essentially the same as the individual defendants dismissed from the earlier suit.[16] Because the issue of individual liability was decided by Judge Crone essentially as a matter of law, there is no reason to believe that the legal result should change simply because the names of the job holders have changed. Therefore, Rodriguez is collaterally estopped from pursuing all claims against the individual defendants in this action.

---

[15] *Rodriguez I* at 21-23, 60-61. Judge Crone also found these defendants entitled to qualified immunity from constitutional claims.

[16] In both suits, Rodriguez has sued the executive director (TDCJ), chairman (Board), personnel director (WSD), principal (WSD), superintendent (WSD), assistant superintendent (WSD), and deputy superintendent (WSD). Although Rodriguez did not assert claims against general counsel (WSD) in his first suit, this addition does not change the analysis.

## **CONCLUSION**

In the words of the Supreme Court, "public policy dictates that there be an end of litigation; that those who have contested an issue shall be bound by the result of the contest, and that matters once tried shall be forever settled as between the parties." *Federated Dep't Stores v. Moitie,* 452 U.S. 394, 401 (1981).  Asking this court to re-decide issues which have already been thoroughly examined and necessarily resolved by a previous judgment defeats that sound public policy.  Nor does this case present special circumstances that would render issue preclusion inappropriate or unfair.[17]  Because the issues of disability status, employer status, and managerial and supervisory liability have already been decided by this district court, Rodriguez is not entitled to a do-over.

Therefore, Rodriguez's claims against Texas Department of Criminal Justice, the Texas Board of Criminal Justice, and the individual defendants Brad Livingston, Christina Crain, Judi Benestante, Michael Durham, Jim Hamilton, Marjie Haynes, and Ronald Bradford warrant dismissal on collateral estoppel grounds.  The claims of disability discrimination and lack of reasonable accommodation against Windham School District are likewise barred.  The viability of Rodriguez's remaining claims against Windham School

---

[17] Rodriguez complains that Judge Crone's summary judgment was rendered without the benefit of his response, which was disallowed as untimely (and properly so).  After review of Rodriguez's voluminous filings here, the court is satisfied that none of his submissions would have altered the rulings now given collateral estoppel effect.  Nor is the court aware of any recent change in governing law which would affect those rulings.

District, as well as other pending motions, will be taken up at the status conference currently set for June 1, 2007.[18]

Signed at Houston, Texas on May 24, 2007.

Stephen Wm Smith
United States Magistrate Judge

---

[18] In light of this disposition, the pending motions by all defendants other than the Windham School District are dismissed as moot. (Dkts. 43, 76).