UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| Jesus Rodriguez, | § | |
| | § | |
|     *Plaintiff,* | § | |
| vs. | § | Civil Action H-06-820 |
| | § | |
| Texas Department of Criminal Justice, | § | |
| *et al.*, | § | |
|     *Defendants.* | § | |

## OPINION ON SUMMARY JUDGMENT

Before the court[1] is the motion for summary judgment by the remaining defendant, Windham School District. (Dkt. 101). Claims against the other defendants were previously dismissed on res judicata grounds. (Dkt. 89). For reasons explained below, Windham's motion is well taken and will be GRANTED.

### BACKGROUND

This is the latest round in a long-running employment dispute between plaintiff Jesus Rodriguez, his employer, Windham School District, and various other state agencies and officials. An earlier lawsuit between these same parties was dismissed on summary judgment in 2003 on the basis of a 101 page opinion by then U.S. Magistrate Judge Marcia Crone. That opinion was also the basis of this court's order of May 24, 2007 dismissing many of plaintiff's claims and all but one defendant on res judicata grounds.

---

[1] The parties have consented to the jurisdiction of this magistrate judge for all purposes, including final judgment. (Dkt. 36).

Remaining for decision is Windham's liability for denying Rodriguez certain promotions and transfers in 2003 and 2005, and for terminating his employment in March 2006. Rodriguez has invoked a multitude of statutory and constitutional provisions in support of his employment discrimination lawsuit against Windham, including Title VII of the Civil Rights Act of 1964, as amended 42 U.S.C. §§ 2000e, the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. § 621, Chapter 21 of the Texas Labor Code, TEX. LAB. CODE ANN. §§ 21.001-21.128, the Civil Rights Act of 1866, 42 U.S.C. § 1981, the Civil Rights Act of 1871, 42 U.S.C. § 1983, 42 U.S.C. § 1982, and 42 U.S.C. § 1985(3), as well as the Equal Protection and Due Process Clauses of the Fourteenth Amendment to the U.S. Constitution.

Windham has filed a summary judgment motion asserting various grounds for judgment in its favor, to which Rodriguez has responded. Before turning to the merits of the motion, it is necessary to address Windham's objections to Rodriguez's summary judgment evidence, most of which are well taken. The various "affidavits" submitted by Rodriguez[2] consist almost entirely of conclusory assertions, hearsay, and legal argument, often laced with personal invective, accusatory rants, and invocations of the deity. Windham is correct that this material is inadmissible on summary judgment. *TIG Ins. Co. v. Sedgwick James,* 276 F.3d 754, 759 (5th Cir. 2002); Fed.R.Civ.P. 56(e). Windham's objections to the decision of

---

[2] Dkt. 108, Exs. A-G.

2

the Texas Workforce Commission Appeal Tribunal[3] on Rodriguez's unemployment claim are also sustained. In addition to their hearsay status, such decisions are irrelevant because they are rendered under a completely different statutory regime serving entirely different statutory goals. *See Whitaker v. Saint Gobain Containers Inc.,* 2006 WL 3095652, *2 (W.D. La. 2006). Windham also properly objects to Rodriguez's generalized reference to all documents on file with the court, which is contrary to Rule 56(e)'s requirement that sworn or certified copies of "all papers or parts thereof referred to in an affidavit shall be attached thereto or served therewith." Finally, however, Windham's objections to portions of the affidavit of Louisteen Justice[4] on grounds of conclusory assertion, speculation, and legal argument are overruled.

## STANDARD OF REVIEW

Summary judgment is appropriate if no genuine issues of material fact exist, and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). The party moving for summary judgment has the initial burden to prove there are no genuine issues of material fact for trial. *Provident Life & Accident Ins. Co. v. Goel*, 274 F.3d 984, 991 (5th Cir. 2001). Dispute about a material fact is "genuine" if the evidence could lead a reasonable jury to find for the nonmoving party. *In re Segerstrom*, 247 F.3d 218, 223 (5th Cir. 2001). "An issue is material if its resolution could affect the outcome of the action." *Terrebonne*

---

[3] Dkt. 108, Ex. A.

[4] Dkt. 108, Ex. A.

*Parish Sch. Bd. v. Columbia Gulf Transmission Co.*, 290 F.3d 303, 310 (5th Cir. 2002). The movant need not introduce evidence to negate the opponent's claim. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

If the movant meets this burden, "the nonmovant must go beyond the pleadings and designate specific facts showing that there is a genuine issue for trial." *Littlefield v. Forney Indep. Sch. Dist.*, 268 F.3d 275, 282 (5th Cir. 2001) (quoting *Tubacex, Inc. v. M/V Risan*, 45 F.3d 951, 954 (5th Cir. 1995)); *Caboni v. Gen. Motors Corp.*, 278 F.3d 448, 451 (5th Cir. 2002). If the evidence presented to rebut the summary judgment is not significantly probative, summary judgment should be granted. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249-50 (1986). In determining whether a genuine issue of material fact exists, the court views the evidence and draws inferences in the light most favorable to the nonmoving party. *Id.* at 255; *Hotard v. State Farm Fire & Cas. Co.*, 286 F.3d 814, 817 (5th Cir. 2002).

*Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 148-49 (2000), succinctly summarizes the appropriate inquiry for granting summary judgment in employment discrimination cases:

> Whether judgment as a matter of law is appropriate in any particular case will depend on a number of factors. Those include the strength of the plaintiff's prima facie case, the probative value of the proof that the employer's explanation is false, and any other evidence that supports the employer's case and that properly may be considered on a motion for judgment as a matter of law.

The court must draw all reasonable inferences in favor of the non-movant, and disregard all evidence favorable to the moving party that the jury is not required to believe. *Id.* at 150-51.

4

Trial courts should not treat discrimination differently than other ultimate questions of fact for purposes of Rule 50 or 56. *Id.* at 148.

## ANALYSIS

**1. Title VII claims**

Rodriguez's Title VII claims are based on three charges of discrimination. The first charge is dated November 16, 2004 and alleges denial of transfers and promotions due to retaliation, disability, national origin, sex, and age discrimination. The second is dated July 7, 2005 and alleges denial of two specific transfers due to retaliation, disability, and national origin discrimination. Finally, the third EEOC charge is dated January 29, 2007, and alleges wrongful discharge based on retaliation and disability discrimination.

**a. Timeliness**

An individual claiming discrimination in violation of Title VII must file a charge of discrimination with the EEOC within 300 days "after the alleged unlawful employment practice occurred." 42 U.S.C. § 2000e-5(e)(1); *see also Grice v. FMC Technologies Inc.*, 216 Fed.Appx. 401, 405 (5th Cir. 2007) (explaining that in Texas the statutory period is 300 days). Rodriguez's first EEOC charge is untimely. In that charge, Rodriguez alleges that the discrimination took place between June 15, 2003 and December 3, 2003. However, he did not sign the charge until November 16, 2004, which was more than 300 days after the alleged discrimination.

Similarly, Rodriguez's third EEOC charge is untimely. In that charge, Rodriguez

5

stated that he was effectively discharged on March 8, 2006 and that he received notification of his discharge on March 11, 2006. Rodriguez, however, did not sign his EEOC charge until January 29, 2007, more than 300 days after the alleged discriminatory discharge. As a result, all of Rodriguez's Title VII discrimination claims arising out of EEOC charges 1 and 3 are dismissed for failure to file a timely charge with the EEOC.[5]

The second EEOC charge was timely filed. However, Windham contends that Rodriguez failed to timely file his lawsuit on this charge within 90 days of receiving his right-to-sue letter from the EEOC, as required by Title VII. 42 U.S.C. § 2000e-5(f)(1). The 90-day period generally begins to run on the date the EEOC right-to-sue letter is delivered to the claimant. *Ringgold v. Nat'l Maint. Corp.*, 796 F.2d 769, 770 (5th Cir. 1986). When the date on which a right-to-sue letter was actually received is either unknown or disputed, courts have presumed various receipt dates ranging from three [five or] seven days after the letter was mailed. *Taylor v. Books A Million, Inc.*, 296 F.3d 376, 379 (5th Cir. 2002).

Rodriguez's right to sue letter for his second EEOC charge was issued on October 7, 2005. Rodriguez did not file this lawsuit until March 10, 2006, beyond the 90 day limitation period. Nonetheless, Rodriguez offers an affidavit from the EEOC stating that he contacted the EEOC in December 2006 to request that the right to sue notice be mailed to him as he had

---

[5] Although discrimination claims arising out of Rodriguez's third EEOC charge must be dismissed as untimely, this court has "ancillary jurisdiction" over his retaliatory discharge claim by virtue of his second EEOC charge. *See Gupta v. East Texas State University*, 654 F.2d 411, 414 (5th Cir.1981) (explaining that it is unnecessary for a plaintiff to separately exhaust administrative remedies in order to bring a retaliation claim growing out of a timely-filed earlier charge).

not received it.[6]  On this basis, Rodriguez alleges that he first received his right to sue letter after it was re-mailed to him on December 14, 2006.[7]  Based on this evidence, this court finds that Rodriguez has at least raised a fact issue on whether his lawsuit based on the second EEOC charge was filed within the 90-day limit.  Accordingly, Windham is not entitled to summary judgment on that ground.

### b. April 2005 Transfer Denial Claims

In his second EEOC charge, Rodriguez alleges that he was denied a transfer to the position of Educational Specialist (Job # 860202) on April 22, 2005 and to a human resource position (Job # 860047) on April 28, 2005 because of his national origin.[8]

After careful review of the record, this court finds that Rodriguez has failed to produce any credible evidence warranting an inference of national origin discrimination.  Rodriguez's case rests almost entirely on his subjective belief that he was discriminated against because of his national origin.  However, an employee's subjective belief that he was discriminated against, standing alone, is not adequate evidence to survive a motion for summary judgment.  *Byers v. Dallas Morning News, Inc.*, 209 F.3d 419, 427 (5th Cir. 2000).

Moreover, Windham has presented undisputed evidence that the applicants selected

---

[6] *See* Dkt. 109, Letter re: Affidavits from the EEOC.

[7] *See* Dkt. 108, Plaintiff's Response and Motion to Deny, p. 9.

[8] In the charge, Rodriguez also alleges that he was discriminated against because of his disability.  However, Rodriguez's disability discrimination claims have already been dismissed on collateral estoppel grounds.  *See* Dkt. 89, p 7.

were better qualified for the position. With respect to the educational specialist position, Windham asserts that Rodriguez was not chosen because he only had two years of teaching experience at an MHMR facility early in his career, did not have teaching experience in Windham School District, and was not as familiar with adult literacy or life skills curricula.[9] In contrast, the person selected (Orville Check) had over 24 years of classroom teaching experience for Windham, including direct implementation of Windham literacy curriculum and the "CHANGES" curriculum, and had previously served as a principal for Windham. Rodriguez has offered no evidence controverting Windham's stated reasons for selecting Check to fill this position.

Similarly, there is no evidence supporting any inference that Rodriguez was denied the Human Resources position because of his national origin. Jim Hamilton, the official responsible for reviewing applications and conducting interviews for this position, explained that Francis Jane Spivey was the best qualified applicant based on her prior experience as a successful Windham teacher and principal, as well as an administrator in the Division of Operational Support auditing Windham educational programs. She also made a very favorable impression with her confident, articulate, and creative responses to interview questions.[10] No record evidence contradicts or calls into question Windham's stated reasons for Spivey's selection over Rodriguez.

---

[9] Dkt. 103, Ex. EE, p. 6.

[10] Dkt. 102, Ex. T, p. 4.

Because Rodriguez has failed to provide any competent evidence suggesting discriminatory intent, and Windham has provided legitimate nondiscriminatory reasons for its actions, Windham is entitled to summary judgment on Rodriguez's claims of national origin discrimination concerning the April 2005 transfers.

**c. Retaliatory Discharge Claim**

The circumstances leading to Rodriguez's discharge in March 2006 are largely undisputed on this summary judgment record.

In August 2005, Rodriguez reserved a state motor pool vehicle to make two scheduled day trips from Huntsville to Beaumont to assess inmates at the Stiles Unit and the LeBlanc Unit respectively. Rodriguez did not make either trip, but submitted vehicle mileage records indicating that he had.[11] For the August 23, 2005 day trip, Rodriguez informed the Stiles Unit that he would not be coming in because of car problems. However, he did not notify anyone at the motor pool of any problems with the vehicle. For the August 25, 2005 trip, Rodriguez failed to show up at LeBlanc Unit stating that he had to turn back around because he was sick. Rodriguez later admitted that he did not return to work that day.[12]

On September 20, 2005, the Office of Inspector General (OIG) opened an investigation of Rodriguez's potential misuse of a state vehicle on August 23 and 25.[13]

---

[11] Dkt. 101, Ex. B.

[12] Dkt. 101, Ex. B-2, Attachment 7.

[13] Dkt. 101, Ex. B.

9

Sharon Butcher, Wynne Unit Education Secretary, was interviewed to determine whether she recalled seeing Rodriguez in the Wynne Unit on August 25, 2005. After Butcher's interview on October 27, 2005, Rodriguez came into her office, very upset, saying "You're in trouble, big trouble, you tried to set me up." Butcher also reported that Rodriguez wanted her to write a statement that she remembered him coming back to the Wynne Unit on the two days in question, but Butcher replied that she "was not going to lie for him."[14]

On November 28, 2005, the OIG issued an incident report sustaining a finding that Rodriguez violated TDCJ Rules 20, 29, 44.[15] Judi Benestante, interim superintendent, reviewed the report and recommended that Rodriguez be suspended without pay and subsequently terminated. After a hearing on January 11, 2006 Rodriguez was suspended without pay and advised that termination of his contract with Windham would be forthcoming.[16] Rodriguez unsuccessfully appealed his impending termination, and after another hearing, Rodriguez was terminated on March 8, 2006.[17]

Rodriguez complains that he was wrongly terminated on March 8, 2006 in retaliation for his numerous in-house grievances, EEOC charges, and lawsuits spanning more than twenty years. *See* Plaintiff's Complaint, p. 15 (Dkt. 75).

---

[14] Dkt. 101, Ex. B-2, Attachment 9, Written Statement of Sharon Butcher.

[15] Dkt. 101, Ex. B.

[16] Dkt. 101, Ex. H.

[17] Dkt. 102, Ex. K.

The anti-retaliation provision of Title VII forbids discrimination against an employee or job applicant who has made a charge, testified, assisted, or participated in a Title VII proceeding or investigation. 42 U.S.C. § 2000e-3(a). To prevail on a retaliation claim, the plaintiff must establish (1) a statutorily protected activity, (2) an adverse employment action, and (3) a causal connection between the protected activity and the adverse action. *Armstrong v. City of Dallas*, 997 F.2d 62, 65 n. 3 (5th Cir. 1993). A "but for" causation standard is applicable to retaliation cases in the Fifth Circuit. *Strong v. University Health Care System, L.L.C.,* 482 F.3d 802, 806 (5th Cir 2007); *Jack v. Texaco Research Center,* 743 F.2d 1129, 1131 (5th Cir. 1984). Under that standard, the plaintiff is required to "put forth legally sufficient summary judgment evidence that [he] would not have been fired but for [his] complaint against [his employer]." *Strong,* 482 F.3d at 806.

Here, Rodriguez's numerous complaints of discrimination unquestionably constitute protected activities, and his termination is certainly an adverse employment action. But his retaliation claim founders for lack of causal nexus. First of all, there is nothing inherently suspicious in the timing of his discharge. By his own admission, Rodriguez had been engaged in protected activity for more than two decades, including a prior discrimination lawsuit filed in 2001. If anything, his lengthy tenure with Windham negates any inference of employer hostility or retaliatory motive. *See Mayberry v. Vought Aircraft Co.,* 55 F.3d 1086, 1092 (5th Cir. 1995) ("there is nothing inherently 'suspicious' about a 13-day suspension that occurs at least several years after protected activity begins"). Rodriguez

offers no hint of hostile reaction by his supervisors to his latest EEOC charges. *Cf. Shirley v. Chrysler First, Inc.,* 970 F.2d 39, 43 (5th Cir. 1992) (supervisor made disparaging remarks about EEOC charge at least twice a week). Nor has Rodriguez presented any admissible evidence of disparate treatment, i.e. that Windham gave preferential treatment to similarly situated employees under nearly identical circumstances. Rodriguez does make unsupported accusations that others committed similar infractions which went unpublished, but there is literally no admissible summary judgment evidence to back up his claims. Bare accusations are not enough to create a jury issue.

Finally, Windham has offered more than sufficient reason to justify its decision to terminate Rodriguez.[18] Rodriguez violated well established rules of conduct regarding use of a state-owned vehicle and witness tampering. In particular, Windham has shown that Rodriguez (1) failed to accurately complete a vehicle mileage record, (2) failed to report a claimed unsafe state-owned vehicle; (3) failed to return to work at the Wynn Unit after cutting short a work trip to Beaumont; and (4) attempted to hinder or influence the information given by a witness in the OIG investigation.[19] Although Rodriguez offer various excuses for his behavior, he does not seriously dispute the factual truth of the misconduct with which he is charged. Nothing on this record remotely suggests that the articulated

---

[18] Dkt. 101, Ex. A, p. 3; Ex. B, p. 3.

[19] Based on the information in the OIG report, there is also evidence that Rodriguez violated numerous other Windham rules and policies, including unexcused absenteeism, failure to obey a proper order from an authority, and verbal or physical confrontation with another employee.

reasons for his discharge were merely a pretext for retaliation. Therefore, Rodriguez's retaliatory discharge claim must be denied.

### d. Disparate Impact Claim

Although Rodriguez mentions disparate impact in the pleadings, he does not specify any grounds for relief on such a claim. *See* First Amended Complaint, p. 14. (Dkt. 75). More importantly, none of the EEOC charges contain any allegations of disparate impact. A Title VII cause of action "may be based, not only upon the specific complaints made by the employee's initial EEOC charge, but also upon any kind of discrimination like or related to the charge's allegations, limited only by the scope of the EEOC investigation that could reasonably be expected to grow out of the initial charges of discrimination." *Dollis v. Rubin*, 77 F.3d 777, 781 (5th Cir. 1995) A disparate impact claim, however, cannot be reasonably expected to grow out of an initial charge claiming disparate treatment and retaliation. *See Pacheco v. Mineta*, 448 F.3d 783, 792 (5th Cir. 2006) (dismissing disparate impact claim because plaintiff's EEOC charge failed to present a disparate impact theory). Therefore, Rodriguez's disparate impact claim is dismissed as unexhausted.

## 2. The Texas Commission on Human Rights Act Claims

Rodriguez filed three charges with the Texas Workforce Commission (TWC). Windham seeks summary judgment dismissing his first two TCHRA claims on the grounds that Rodriguez did not file his lawsuit within 60 days after receiving the notice of the right to file a civil action from the Texas Workforce Commission. Under Section 21.254 of the

13

Texas Labor Code, the plaintiff must bring a civil action within 60 days after the Texas Workforce Commission (TWC) issues a right to sue letter.

For his first two charges, the TWC sent Rodriguez a right to sue letter on May 25, 2005 and October 7, 2005.[20]  Rodriguez, however, did not file this action in federal court until March 10, 2006, more than a year later.  Therefore, Rodriguez's TCHRA claims arising out of his first two charges are dismissed as untimely.  *See Lottinger v. Shell Oil Co.*, 143 F.Supp.2d 743, 753 (S.D.Tex.2001) (pointing out that TCHRA actions filed in federal court after the passage of sixty days from receipt of the notice of right to file a civil action "are routinely dismissed as untimely").

Rodriguez's third TCHRA charge pertaining to his unlawful termination claim was not timely filed with the TWC.  Under section 21.202(a), a plaintiff claiming discrimination or retaliation must file a charge of discrimination with the TWC no later than the 180th day after the date that the alleged unlawful employment practice occurred.  Rodriguez, however, waited 321 days after receiving notice of his termination to file a charge of discrimination with the EEOC, which then forwarded the charge to the TWC.[21]

As a result, Windham is entitled to summary judgment on Rodriguez's untimely TCHRA claims.

---

[20] Dkt. 103, Ex. AA.

[21] Dkt. 102, Ex. W.

### 3. Section 1982, Equal Protection, and Due Process Claims

Rodriguez has made only a bare reference to a section 1982 claim and the denial of equal protection and due process, offering no facts to support such claims. Unsupported allegations do not raise genuine issues of material fact required to avoid summary judgment. *First Nat. Bank of Ariz. v. Cities Serv. Co*, 391 U.S. 253, 289 (1968). Therefore, these claims are dismissed.

### 4. Sovereign Immunity

Rodriguez's ADEA, and §§ 1981, 1983, and 1985(3) claims are precluded by the Eleventh Amendment because Windham is a state agency of Texas and enjoys the same immunity as the state itself.[22] The Eleventh Amendment bars suits in federal court by a citizen of a state against his own state or against a state agency or department. *Pennhurst State School & Hosp. v. Halderman*, 465 U.S. 89, 100 (1984); *Hirtz v. Texas*, 974 F.2d 663, 665 (5th Cir. 1992). Congress can abrogate the states' sovereign immunity when acting to enforce constitutional rights pursuant to section 5 of the Fourteenth Amendment. *See Seminole Tribe of Florida v. Florida*, 517 U.S. 44 (1996). Nonetheless, Congress has not chosen to abrogate the states' immunity for suits under §§ 1981, 1983, and 1985(3). *Hines v. Mississippi Dept. of Corrections*, 239 F.3d 366, (5th Cir. 2000) (unpublished opinion). Similarly, Congress did not validly abrogate the states' sovereign immunity to suits by

---

[22] *See Jesus Rodriguez v. Texas Dep't of Criminal Justice, et al.,* Civil Action No. H-01-3985, p. 59 (Memorandum and Order, July 24, 2003) (Crone, J.)("*Rodriguez I*") (dismissing Rodriguez's ADA claims against Windham as precluded by the Eleventh Amendment).

15

private individuals under the ADEA. *Kimel v. Florida Bd. of Regents*, 528 U.S. 62, 91 (2000). Therefore, Rodriguez's ADEA, and §§ 1981, 1983, and 1985(3) against Windham are dismissed on sovereign immunity grounds.

## CONCLUSION

For the reasons discussed above, it is ordered that Windham's motion for summary judgment be granted in its entirety. Judgment will be entered dismissing all claims by Rodriguez against Windham.

Signed at Houston, Texas on September 7, 2007.

_____
Stephen Wm Smith
United States Magistrate Judge